DAVID E. HEASLEY AND KATHLEEN HEASLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heasley v. Commissioner
Docket No. 46147-86
United States Tax Court
T.C. Memo 1991-189; 1991 Tax Ct. Memo LEXIS 216; 61 T.C.M. (CCH) 2503; T.C.M. (RIA) 91189; April 29, 1991, Filed *216 John D. Copeland, for the petitioners. David L. Click, for the respondent. GERBER, Judge. GERBER
SUPPLEMENTAL MEMORANDUM OPINION Petitioners seek the award of attorney's fees and litigation costs in this case. Petitioners had conceded the income tax deficiencies for three years involving a "tax shelter" and litigated the question of the additions to tax under sections [1] 6653(a), 6659, and 6661. Petitioners also contested the determination of the increased rate of interest under section 6621(c). We held that petitioners were liable for the additions to tax and for the increased rate of interest. . Petitioners appealed and the U.S. Court of Appeals for the Fifth Circuit reversed our decision. . Thereafter, on October 26, 1990, we entered a decision in petitioners' favor in accord with the Circuit Court's reversal. *217 On November 9, 1990, petitioners' Motion for Litigation Costs, along with an affidavit of attorney John D. Copeland, was received. Although petitioners did not completely comply with our Rules concerning motions seeking fees and costs, we vacated our October 26, 1990, decision, ordered the filing of petitioners' motion out of time, and ordered respondent to file a response to petitioners' motion in accordance with Rule 232(a)(2). Section 7430(a) [2] *218 authorizes the awarding of reasonable litigation costs to the prevailing party. Under section 7430(c)(2) [3] the "prevailing party" is one who "establishes that the position of the United States in the civil proceeding was not substantially justified" and one who "has substantially prevailed with respect to the amount in controversy" or "has substantially prevailed with respect to the most significant issue or set of issues presented." Respondent generally agrees that petitioners have met all the requirements of section 7430, with the exceptions that petitioners have not shown that (1) they substantially prevailed and (2) that the position of respondent was unreasonable or not substantially justified. If we agree with petitioners on these two issues, then respondent contends that the amount of petitioners' litigation costs (attorney's fees) is not reasonable. Petitioners argue that they were ultimately successful on all issues litigated. Respondent *219 counters that petitioners did not substantially prevail because they conceded more than 50 percent of the adjustments determined in the statutory notice of deficiency. Respondent notes that petitioners conceded the income tax deficiencies for all three years, and that their success was with respect to the additions to tax and increased interest. The more specific question raised by this controversy is whether we should focus on all issues between the parties or only those which were tried and the subject of our opinion. The statute permits petitioners to show either that they have substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented. Although we might agree with respondent that petitioners may not have substantially prevailed with respect to the amount in controversy, [4] they have substantially prevailed with respect to "the most significant issue or set of issues presented." *220 It is reasonable to interpret the term "presented" in the statute to refer to those issues which were the subject of the litigation and opinion. The distinction in the statute would appear to provide for situations where the issues are settled or for those which are tried. Of course, as here, we may encounter situations where some issues are settled and some are resolved by opinion and decision. In those situations, the statute appears to permit taxpayers to meet the requirements of either section 7430(c)(2)(A)(ii)(I) or (II). In this case, the issues presented to the Court involved three additions to tax plus increased interest variously determined in each of three taxable years. Although we decided all of those issues unfavorably to petitioners, the Court of Appeals for the Fifth Circuit reversed our holding and petitioners thereby meet the section 7430(c)(2)(A)(ii)(II) test. Having decided that petitioners have substantially prevailed, we must finally consider whether respondent's position was or was not substantially justified [5] in order to determine whether petitioners are prevailing parties.
*221 Petitioners bear the burden of proving that respondent's position is not substantially justified. Rule 232(e); , vacated and remanded on other grounds ; , affd. . Respondent's loss or concession of an issue does not, ipso facto, render respondent's position not substantially justified. ; . Most courts, including this one, have held that the term "substantially justified" is essentially the same as the term "reasonableness " under the Equal Access to Justice Act. , affd. ; . A few courts had reasoned that the test for the Government's position should be "slightly more stringent than one of reasonableness" (see ). *222 The Supreme Court, however, in , after reviewing the legislative history from which the "more stringent" view was derived, adopted the standard "reasonable basis both in law and in fact," which is the standard used by the majority of courts, including this Court. Petitioners argue that respondent's position regarding the additions to tax was not substantially justified. In support of that argument, petitioners refer to the opinion of the Court of Appeals for the Fifth Circuit which reversed our opinion. Petitioners refer to the following specific language in the Circuit Court's opinion: The I.R.S. should not exact every penalty possible in every case where taxpayers pay less than the full amount of tax due. Here, on rather questionable facts, the I.R.S. did just that. This case simply does not support such draconian efforts. Therefore, we REVERSE the decision of the tax court and the I.R.S.'s assessment of penalties and interest.
. Petitioners also argue that the Circuit Court reversed all issues either because there was clear error in the *223 finding of the trial court or because respondent abused his discretion. Petitioners' references here are to the language of the Circuit Court's opinion and the standards for reversal. We, however, are compelled to consider whether respondent was substantially justified based upon the state of the law and facts in this case at the time respondent took his position in the litigation. That does not mean that a subsequent appellate court opinion should be ignored in the consideration of the analysis of the law and facts. It does mean that respondent was not advised of the subsequent opinion and unless analogous and/or "on-point" precedent existed when respondent took the position, we cannot charge respondent with knowledge of such pronouncements in considering his reasonableness in taking a particular position as to the legal standard or a particular interpretation of fact. Respondent's challenge of petitioners' position should not automatically be regarded as the advocacy of an unreasonable or irresponsible legal position. See . Additionally, as we stated in : *224 Petitioners point only to the ultimate failure of respondent's evidence to support his position to show that his position was unreasonable. The logical extension of petitioners' argument is that the party whose evidence fails to persuade the trier of fact has taken an unreasonable position. If a party can be chastised for such a failure, then every losing party must be so chastised. Such an interpretation does not manifest Congress' intention in enacting this statute and we will not endorse it. [Citations omitted.]
In , the Court of Appeals for the Fifth Circuit addressed a similar situation, as follows: The government also finds support in the language from the House Report which suggests that a government position cannot be unreasonable if a district court rules in its favor. (H.R.Rep. No. 404, 97th Cong., 1st Sess at 15). But this factor, obviously an important consideration, cannot be dispositive of the question of reasonableness since it would automatically require appeal courts to assume that every district court acts on a soundly reasoned basis in every tax case. *225 Because this will not always be true, we must make a distinction between cases in which there exist two plausible interpretations and cases in which the district court simply misconstrues the statute and underlying regulations.* * *
Accordingly, we must consider the Circuit Court's opinion with respect to each of the additions and the increased interest separately in order to analyze the reasonableness, if any, of respondent's position. Section 6659, involving valuation overstatement additions to tax, was first discussed. The Circuit Court found for petitioners regarding that addition, relying upon an opinion from the same circuit ( which was issued subsequent to the issuance of our Memorandum Opinion in this case. With respect to section 6659, respondent's position was substantially justified and reasonable. Prior to the Fifth Circuit's opinion in , the issue was in flux and litigants in the Fifth Circuit could have reasonably argued either position. Clearly this was an issue for which "two plausible interpretations" existed at the time respondent *226 litigated and at the time of the issuance of this Court's Memorandum Opinion. The second issue considered by the Circuit Court involved the negligence addition to tax under section 6653(a). On this issue the Circuit Court held that the Heasleys were "moderate-income" and unsophisticated investors and that, as such, they were not required to "independently investigate their investments." . Instead, the court held that they may rely on the expertise of their financial advisers. In , the Supreme Court found that the executor's reliance upon the estate's attorney to file the return (an obligation of the executor under the statute) was not reasonable and the Commissioner's determination of an addition to tax for late filing of the return was sustained. The Supreme Court expressed the principle that it is reasonable for a taxpayer to rely upon the advice of an attorney or accountant as to whether a tax liability exists because taxpayers are not competent to discern error in the substantive advice. That opinion did not provide that a taxpayer may rely upon an adviser for nonlegal investment *227 or technical matters or with regard to the verification of the facts necessary to support a taxpayer's claim to a deduction or credit on their return. Respondent, in part, was successful in this Court because of the argument that petitioners failed to show that it was reasonable to rely on their advisers. More specifically, it was not shown that the advisers had appropriate expertise, the extent or quality of petitioners' analyses of the leasing transaction, and their verification, if any, of the factual underpinnings of the amounts claimed on petitioners' income tax return. The Circuit Court decided that reliance was appropriate in this case because of petitioners' lack of sophistication and because they were "moderate-income" investors. Without attempting in any way to question the Circuit Court's opinion, we note that other circuit courts [6] have decided the question of whether one may avoid the additions to tax merely by relying on his adviser both for and against the Government. See, e.g., , decided against the Government; , *228 affg. , decided for the Government.
No per se reliance rule had been expressed by any court at the time *229 of respondent's determination, the trial, or the issuance of our Memorandum Opinion. Petitioners were required to show that it was reasonable to rely upon their advisers. The question of whether it was reasonable to rely upon the tax adviser regarding the factual aspects or potential tax consequences is a factual one. There were factors relied upon by respondent and different factors relied upon by petitioners. This Court held that respondent had made the better case and that petitioners had not shown it was reasonable to rely upon their advisers. The Circuit Court, however, held that petitioners had shown it was reasonable. In the setting of this case we cannot conclude that respondent was unreasonable in taking the positions he relied upon. This matter did not involve a misinterpretation of law. It involved a difference in the emphasis placed on various factors. The Circuit Court did not find the underlying facts to have been erroneously found. The Circuit Court did find that the conclusion reached (as to petitioners' negligence) was in error. Respondent also points out that petitioners conceded in full that they were not entitled to the deductions and credits they had *230 claimed in connection with their "investment." Those concessions represented more than one-half of the amount originally determined by respondent and were, in part, the basis for respondent's determination that certain additions to tax were appropriate. Accordingly, we hold that respondent's position and determination were reasonable and were substantially justified with respect to the section 6653(a) addition to tax. The third issue considered by the Circuit Court concerned the section 6661 substantial understatement addition to tax. In holding that respondent had abused his discretion by failing to waive this addition to tax, the Circuit Court focused on the same concepts as had been considered under the section 6653(a) addition to tax. Concerning section 6661, however, the Circuit Court found that respondent did not properly apply his own regulatory standards and that respondent abused his discretion by failing to waive the addition to tax. The Circuit Court's holding is inherently based upon a reasonableness standard and we must necessarily conclude that respondent's position on this addition was unreasonable. See , *231 affd. , cert. denied . The last issue considered by the Circuit Court involved the increased interest under section 6621(c). That section would apply with respect to transactions which are "tax-motivated." Respondent had argued that petitioners had not engaged in the transaction for profit. Several factors were presented by respondent and were reviewed in our Memorandum Opinion, which we held supported a lack of a profit objective finding. The Circuit Court opinion indicates that this Court failed to consider the Heasleys' intent in determining that they did not engage in the transaction for profit. The Circuit Court's opinion goes on to state that "The Heasleys invested in the plan to earn income, not to avoid tax liability." . Without questioning the Circuit Court's opinion, we cannot conclude on this record that respondent's position on this point was unreasonable or not substantially justified. Moreover, section 6621(c) applies in situations where there is a valuation overstatement under section 6659 (see section 6621(c)(3)(A)(i)), which respondent had determined *232 and which, as discussed above, was reasonable to argue under Fifth Circuit precedent at the time of the issuance of our Memorandum Opinion. Accordingly, with respect to the fourth and final issue, we also find that respondent's position was reasonable and substantially justified. Accordingly, respondent's position was reasonable or substantially justified regarding two of the three additions to tax and regarding the increased rate of interest. Petitioners have met all prerequisites necessary for the recovery of fees and costs under section 7430 with respect to one of four issues presented. Looking at the additions to tax in a quantitative sense, respondent's position was reasonable regarding $ 7,093.95 out of $ 7,908.45 (or almost 90 percent) in additions to tax. There is no breakdown as to the amount of time spent on each issue. A breakdown as to issues is not required under our Rules and it is unlikely that attorneys maintain time worked on a case by issue. Accordingly, we think it appropriate to allocate one-fourth of allowable fees and costs to petitioners. Petitioners claimed $ 39,425.92 in attorney's fees and costs of $ 795.94 (transcript $ 735.94 and filing fee $ 60.00), *233 for a total claim of $ 40,221.86. With respect to the costs, petitioners will be awarded $ 198.99 ($ 735.94 plus $ 60.00 equals $ 795.94, divided by 4 equals $ 198.99). Respondent, however, objects to the amount of the fees claimed by petitioners' attorneys. Section 7430(c)(1)(A)(ii)(III) limits the attorney's fees to $ 75 per hour, unless the Court determines that a higher rate is justifiable. Respondent argues that petitioners have not shown why a higher rate is warranted for a case where the main issue was conceded (tax deficiency) and only the additions to tax and increased interest were litigated. Also, the additions in dispute totaled $ 7,908.45 without considering the increased interest (120 percent of the usual rate) for tax-motivated transactions. Petitioners' attorney's affidavit reflects that one of the two attorneys bills time at about $ 200 per hour and the other at about $ 100 per hour. It was stated in the affidavit that those amounts are the going rates in Dallas, Texas, for tax specialists with the experience and background possessed by the attorneys in this case. Petitioners did not provide a breakdown of specific hours and charges regarding the legal fees *234 as required in Rules 231(d) and 232(d). Respondent disagreed with the reasonableness of the legal fees claimed in his Objection To Petitioners' Motion For Attorney's Fees And Litigation Costs, filed January 25, 1991. To date, a more specific and detailed affidavit, as required by our Rules, has not been received. Section 7430(c)(1)(A)(ii)(III) provides that attorney's fees "shall not be in excess of $ 75 per hour unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." In a relatively recent case, we considered the $ 75 statutory cap on fees contained in section 7430. . In that opinion we permitted an increased fee (ranging between $ 91.43 and $ 99.60 for 1987 through 1989) based upon cost of living increases to the $ 75 statutory cap under the Equal Access to Justice Act. Petitioners here have not shown the years in which the fees were earned, but it is clear that this case was petitioned late in 1986 and that work was performed during 1987. Because of petitioners' failure *235 to provide details, we assume that most of the legal work was performed in 1987 and we use the $ 91.43 indexed rate in lieu of the statutory $ 75 rate. Petitioners here argue that their attorneys are entitled to fees of $ 200 and $ 100 per hour because those amounts represent the going rates for attorneys in Dallas, Texas. We addressed that same argument in Cassuto and held that the going rate in an area was not "a special factor" which would permit more than the $ 75 per hour cap within the meaning of section 7430. See also . Because petitioners have not shown that special factors exist in this case, legal fees are limited to $ 91.43 per hour. Our next problem relates to petitioners' failure to provide specific details concerning the number of hours each of the two attorneys worked on this case. Due to petitioners' failure, we divide the total fee claimed by the largest claimed fee of $ 200 to arrive at about 197 hours ($ 39,425.92 divided by $ 200). Using a one-fourth allocation we arrive at 49 hours times $ 91.43, or $ 4,480.07. To reflect the foregoing, An appropriate order will be entered *236 . Footnotes
1. Section references are to the Internal Revenue Code as amended and in effect for the matters under consideration. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 7430 has been modified and amended several times since its first enactment as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324. For purposes of this case, we apply sec. 7430 as it was in effect for proceedings commenced after Dec. 31, 1985, pursuant to amendments and modification made by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085.↩
3. Sec. 7430(c)(2), in pertinent part, contains the following: (2) Prevailing party. -- (A) In general. -- The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which -- (i) establishes that the position of the United States in the civil proceeding was not substantially justified, (ii)(I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented, * * *↩
4. We are assuming for purposes of this discussion that the term "controversy" includes all issues and amounts set out in the notice of deficiency and the pleadings in which petitioners have alleged error.↩
5. For civil tax cases commenced after Dec. 31, 1985, sec. 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752, changed the language describing the position of the United States from "unreasonable" to "was not substantially justified." We have held that the substantially justified standard does not represent a departure from the reasonableness standard. ; ; , affd. , and cases cited therein.↩
6. In an opinion issued just after the Fifth Circuit's opinion in , the Fifth Circuit also addressed the negligence addition to tax under sec. 6653(a) in the context of a tax shelter case. , affg. . In that case the taxpayers were "professionals with investment experience that should have alerted them to the questionable financial validity of the * * * [tax shelter] program." . The advisors in Freytag↩ had no expertise in the financial aspects of the portfolios involved. The Tax Court held that the taxpayers were not entitled to rely on their advisors to avoid imposition of the negligence addition to tax and the Fifth Circuit affirmed.